# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

GREGORY E. STEVENSON,     )
                                          )
        Petitioner            )
                                          )
                                          )      No. 4:10CV2055 AGF/LMB
                                          )
IAN WALLACE,[1]              )
                                          )
        Respondent,       )

## REPORT AND RECOMMENDATIONS
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation on dispositive matters and for rulings on non-dispositive matters. Having reviewed the case, the undersigned recommends that the petition be dismissed.

## Background

Petitioner was charged with one count of felony assault of a law enforcement officer and one count of armed criminal action for shooting at and

---

[1] The record reveals that Petitioner was incarcerated at the Southeast Correctional Center (SECC) at the time this habeas action was filed and is still incarcerated there. Jeff Norman, the originally named Respondent, was the Warden of SECC when Petitioner filed this action, but Ian Wallace is now SECC's Warden and will be substituted as the proper party respondent. See Rule 2(a) of the Rules Governing § 2254 Cases.

trying to kill Police Officer Bryan Dover of the Sikeston Police Department. Resp't Ex. B at 16.

On October 26, 2004, at around 11:00 p.m., Officer Dover was patrolling the west end of Sikeston when he spotted a blue Ford pickup parked on the side of the road with no lights on. Resp't Ex. A at 225. Dover turned to where the vehicle was and put his spotlight on it to see if it was occupied or not. Id. at 225-26. As he approached, Dover could see that the vehicle was occupied by two black males. Id. at 226. While he was travelling towards the vehicle it took off with its headlights off. Id. Dover then initiated a pursuit, turning his emergency lights and siren on. Id. at 227.

The pickup ran through a couple of stop signs, then it stopped and both occupants "bound out of the truck." Id. at 228-29. Dover placed his car close to the driver's side door of the truck, trying to force the driver to stay in the vehicle. Id. at 229. The driver managed to exit the vehicle, however, placing his hand on the hood of Dover's car as he exited. Id. As Dover exited his car he heard gunshots coming from right in front of him. Id. at 230. Dover, in fear for his life, retreated into the cabin of his vehicle during the shooting. Id. at 232. While he was crouched there, more than one bullet struck his car. Id. at 234. The occupants of the vehicle fled on foot, and Dover stayed near the scene until his backup arrived. Id. at 233-34.

2

During the investigation, bullet fragments and casings were found at the scene and in Dover's vehicle.  Id. at 115, 122-25.  Investigators recovered fingerprints and a palm print from where the driver had placed his hand on the hood of Dover's vehicle.  Id. at 116-18, 141-43, 229-30, 244-49.  Investigators also recovered a piece of paper from the pickup with the name Tonya Rogers written on it; also found were controlled substances.  Id. at 143-44.

By the following day, October 27, 2004, the primary suspects were Stacey Townsend and Petitioner.  Id. at 148.  Investigators interviewed Townsend that day.  Id.  Investigators did not make contact with Petitioner, however, until November 29, 2004.  Id. at 149.  When the investigator interviewed Petitioner, rolled palm prints were taken from Petitioner for comparison with the prints recovered from Dover's vehicle.  Id. at 149-50.  Additionally, investigators had  a previous set of fingerprints taken from Petitioner in December 2002.  Id. at 152-53, 155.

Comparisons of the palm print and fingerprints lifted from Dover's vehicle were matched to Petitioner's fingerprint cards by officials at the crime laboratory.  Id. at 256-61.  Analysis of the bullet fragments removed from Dover's car and the scene revealed that most of them were 9 millimeter; however, the bullet removed from the passenger seat of Dover's patrol car was .25 caliber.  Id. at 139, 265-71.

At trial, Tonya Rodgers testified that she borrowed the blue pickup truck from her boyfriend and lent it to Petitioner, Stacey Townsend, and another man on the night of October 26, 2004.  Id. at 157-60.  Rodgers further testified that Petitioner called her later that night and told her that he "lost the truck." Id. at 161.  Petitioner did not tell her what happened to the truck; he hung up the phone.  Id.  The following day, police officers located Rodgers and took her to the police station where she identified Petitioner and Townsend from photographs as the men to whom she had lent the truck.  Id. at 162-63.

Stacey Townsend testified at trial that he grew up with Petitioner.  Id. at 170-71.  Townsend further testified that Petitioner picked him up in the pickup truck in the early evening of October 26, 2004.  Id. at 172.  Townsend testified that they picked up his nephew and went to the hotel where Rodgers was staying.  Id. at 173.  After leaving the hotel, the three of them drove around for a while and hung out at a convenience store.  Id. at 176.  Eventually, they dropped off Townsend's nephew and went to a drive-through liquor store.  Id.

Townsend testified that he was in possession of a 9 millimeter handgun that evening.  Id. at 177-80.  Townsend further testified that Petitioner acquired a .25 caliber automatic pistol that evening around 8:00 or 9:00 p.m.  Id. at 180.  After they left the liquor store, Petitioner and Townsend drove about a block-and-a-half down the street and stopped; Petitioner told Townsend he needed to go into a

house to get a sweater.  Id. at 181-82.  Townsend testified that while they were stopped a police vehicle pulled around.  Id. at 182.

According to Townsend, when the police vehicle came around, Petitioner hit the gas on the pickup and drove around the streets in a circle until they stopped in front of Townsend's sister's house.  Id. at 182-83.  Townsend stated that when Petitioner left the vehicle he started shooting the .25 caliber pistol at the police vehicle.  Id. at 184.  Townsend further stated that he began firing his 9 millimeter pistol at this time.  Id.  Townsend and Petitioner fled separately from the scene.  Id. at 184-85.

A jury found Petitioner guilty of both assault on a law enforcement officer and armed criminal action.  Id. at 58-59.  The trial court sentenced Petitioner to twenty years' imprisonment on each count, with the sentences to run concurrently. Id. at 66-67.

On direct appeal, Petitioner raised five points of error and argued that the trial court abused its discretion in admitting the following evidence: (1) drugs found in Petitioner's truck; (2) testimony from Officer Elder that she had previously arrested Petitioner and the admission of a fingerprint card from that arrest; (3) a lab report showing that the substance found in Petitioner's vehicle was cocaine; Petitioner further argued that the trial court further abused its discretion in (4) prohibiting him from questioning the jury panel about whether everyone on the

panel agreed that, if the state failed to meet its burden of proof, the jury must find him not guilty; and (5) overruling his request for a mistrial after announcing to the jury that it would not allow a witness to be called. Resp't Ex. E at 1-2. The Missouri Court of Appeals found no error and affirmed. Id. at 2-9. Petitioner did not move for rehearing in the Missouri Supreme Court, and the Missouri Court of Appeals issued its mandate on October 10, 2007. See docket sheet for State v. Stevenson, No. ED88499 (Mo. Ct. App.) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do).

Petitioner filed his pro se motion for postconviction relief under Rule 29.15 on January 15, 2008. Resp't Ex. G at 5. Counsel was appointed for Petitioner, and Petitioner filed an amended motion on July 14, 2008. Id. at 39. In the amended motion, Petitioner argued that (1) trial counsel was ineffective for failing to locate and interview Jody Owens, who would have testified that he did not give Petitioner a .25 caliber pistol on the night of the incident; (2) trial counsel was ineffective for failing to adduce from Stacey Townsend that he was testifying for the state because he perceived a possible benefit; and (3) trial counsel was ineffective for failing to object when the prosecutor stated in closing argument that it was "uncontradicted" that Petitioner shot at Dover, indirectly referring to Petitioner's right to remain silent. Id. at 55-61. The motion court denied the motion after holding an evidentiary hearing. Id. at 69-70.

6

Petitioner raised only one claim in his postconviction appeal, that trial counsel was ineffective for failing to adduce from Stacey Townsend that he was testifying for the state because he perceived a possible benefit. Resp't Ex. H at 2.

The Missouri Court of Appeals affirmed. The appellate court applied the ineffective assistance of counsel claim standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and agreed with the motion court that Petitioner had failed to show that counsel's performance was unreasonable. Resp't Ex. J at 4-5. Specifically, the court concluded that counsel's performance was not deficient because he elicited on cross-examination that Townsend hoped to receive a better "deal" after testifying for the state. Id. at 4. Townsend admitted during testimony telling several lies to the police about what happened before coming forward with the testimony he gave at trial, as advised by his attorney. Id. The court found that "any reasonable juror would have understood that [Townsend] not only perceived a possible benefit for himself, but a reasonable juror would understand the exact nature of the benefit." Id. The court further found that, based on counsel's testimony at the evidentiary hearing, that counsel's questions on cross-examination were part of a reasonable trial strategy, because counsel was trying to demonstrate the contrast in potential sentences for Petitioner and Townsend "so that the jury could infer that [Townsend] would benefit from the testimony." Id. at 5. The Missouri Court of Appeals issued its mandate on March

18, 2010.  See docket sheet for <u>Stevenson v State</u>, No. ED92740 (Mo. Ct. App.) (available at <u>https://www.courts.mo.gov/casenet/cases/searchDockets.do</u>).

## The Petition/Amended Petition

Petitioner then timely filed his federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on October 28, 2010.  In his first petition, Petitioner brought four grounds for relief: (1) the prosecutor committed misconduct when he allowed Townsend to testify that there was no "deal" in place when, in fact, the prosecutor "knew a plea bargain was in play when Mr. Townsend testified"; (2) Petitioner was denied his right to an impartial jury because Juror Schoenberger indicated during voir dire that she had friends who were law enforcement and could not be impartial; (3) the trial court erred in admitting testimony of his prior arrest and admitting the fingerprint card from that arrest, showing evidence of prior bad acts; and (4) the trial court erred when it prohibited him from asking on voir dire whether the venirepersons agreed that if the state did not prove Petitioner's guilt beyond a reasonable doubt, they would return a verdict of not guilty.

On July 16, 2002, Petitioner filed a proposed amended petition for writ of habeas corpus, and the Court subsequently granted Petitioner leave to file the amended petition.  In his amended petition, Petitioner sought to amend grounds one and two from the original petition and to bring four new grounds for relief. The grounds in the amended petition are all predicated on ineffective assistance of

postconviction-relief counsel under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012). Specifically Petitioner argued that postconviction-relief counsel was ineffective for failing to include the following claims in the amended Rule 29.15 motion: (1) the state violated Petitioner's constitutional rights by failing to disclose that Stacey Townsend was facing federal charges when he testified against Petitioner; (2) trial counsel was ineffective for failing to strike venireperson Schoenberger for cause, and Petitioner's direct appeal attorney was ineffective for failing to raise this issue on appeal for plain error; (3) trial counsel was ineffective for failing to properly impeach Stacey Townsend on cross-examination; (4) trial counsel was ineffective for failing to investigate whether there were any federal charges pending against Townsend; (5) trial counsel was ineffective for failing to cross-examine Pam Johnson, fingerprint analyst, regarding the accuracy of the fingerprint evidence; and (6) trial counsel was ineffective for failing to come to trial prepared to effectively cross-examine the state witnesses.

### The Amended Petition, <u>Martinez</u>, and Relation Back

In <u>Martinez</u>, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 132 S. Ct. at 1315. The Court did not hold, as Petitioner appears to argue, that a claim for ineffectiveness of postconviction-relief counsel is an independently cognizable

claim.  Rather, ineffectiveness of postconviction-relief counsel may, in certain circumstances, allow a habeas Petitioner to proceed on an otherwise defaulted claim of ineffectiveness of trial counsel.  Id.

Rule 15(c)(1) of the Federal Rules of Civil Procedure states:

An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The United States Supreme Court has held that relation back is proper if the claim to be amended into the petition is tied to the original petition by "the same core facts as the timely filed claims," but relation back is not warranted "when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."  Mayle v. Felix, 545 U.S. 644, 657-58 (2005).  "An

10

amended claim that is of a different type than any claim in the original petition will generally not relate back." Brian Means, Federal Habeas Manual § 9A:154 (2012).

The grounds for relief in the amended petition are separate in both time and type from those in the original petition. Each ground pertains to ineffectiveness of postconviction-relief counsel for failing to include certain claims in the amended Rule 29.15 petition, whereas the grounds for relief in the original petition are for trial court error or prosecutorial misconduct. As a result, the grounds in the amended petition do not relate back to those in the original petition.

Because the claims in the amended petition do not relate back to the original petition, the claims in the amended petition are barred by the limitations period. After affirming the denial of postconviction relief, the Missouri Court of Appeals issued its mandate on March 18, 2010; therefore, any new claims not contained in the original petition would have had to be filed no later than March 18, 2011, at the latest. Petitioner did not present the claims in the amended petition to this Court until July 16, 2002, which is too late for those claims to be considered by this Court. As a result, the Court recommends that the claims in the amended petition be dismissed as time-barred.

The Court now turns to the claims in the original petition.

## Procedural Default

To avoid defaulting on a claim, a Petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (citing, in part, to Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)); accord Baldwin v. Reese, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a Petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Wemark, 322 F.3d at 1021 (internal quotation marks and citations omitted). Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the Petitioner can demonstrate cause and prejudice for the default. Gray, 518 U.S. at 162.

Missouri requires the raising of constitutional claims at the first available opportunity. See In re J.M.N., 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); In re T. E., 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial court errors, including constitutional claims of trial court error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to

obtain a second appellate review." State v. Clark, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord State v. Twenter, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be litigated in a postconviction proceeding"). "If the allegations of trial error are constitutional violations, they are not cognizable [in a postconviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." Clark, 859 S.W.2d at 789; accord Amrine v. State, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); Allen v. State, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995) (per curiam). Therefore, if a trial court's alleged violation of the constitution is not raised on direct appeal, the claim is defaulted absent exceptional circumstances justifying the failure to raise the errors on direct appeal, and then the matter may be pursued in a postconviction proceeding.

### 1. Ground One

In ground one, Petitioner argues that the prosecutor committed misconduct when he allowed Townsend to testify that there was no "deal" in place when, in fact, the prosecutor "knew a plea bargain was in play when Mr. Townsend testified." Petitioner did not present this claim on direct appeal or on appeal from the denial of his postconviction-relief motion.

In his amended petition, Petitioner recognizes that this ground is procedurally defaulted. Am. Pet. at 3. Petitioner states in the amended petition that he wishes to abandon the claim presented in the original petition and argue instead that the state failed to disclose that Townsend was facing federal charges. Petitioner believes this constitutes <u>Brady</u> evidence that could have impeached Townsend's testimony. <u>Id.</u> at 3-4. Later in the amended petition, however, Petitioner frames this claim in terms of ineffective assistance of counsel; namely, that counsel was ineffective for failing to investigate the fact that Townsend was facing federal charges. <u>Id.</u> at 12.

To the extent that Petitioner is attempting to bring a claim for prosecutorial misconduct, based either on the existence of a deal between Townsend and the state prosecutor or of the filing of federal charges, such claim is procedurally defaulted. Petitioner has not alleged cause and prejudice for the default, and as a result, Petitioner is not entitled to relief on any claim for prosecutorial misconduct. And, as is stated above, Petitioner's claim for ineffective assistance of postconviction counsel does not relate back to the original petition, and therefore, that claim is barred by the statute of limitations. In consequence, Petitioner is not entitled to relief on ground one of the petition, in any of its forms.

2.      Ground Two

In ground two, Petitioner argues that he was denied his right to an impartial jury because Juror Schoenberger indicated during voir dire that she had friends who were law enforcement and could not be impartial.  Petitioner did not make a challenge for cause at trial, and he did not raise this claim on direct appeal or in his postconviction appeal.  Petitioner has not shown cause or prejudice for the default.  Consequently, Petitioner is not entitled to relief on ground two of the petition.

The Court now turns to the merits of grounds three and four of the original petition.

## Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions."  Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

## Discussion

1. Ground Three

In ground three, Petitioner argues that the trial court erred in admitting testimony of his prior arrest and admitting the fingerprint card from that arrest, showing evidence of prior bad acts. Respondent argues that the admission of the fingerprint card into evidence did not rise to the level of a Due Process violation under the Constitution and that the state court's decision was reasonable.

In its order affirming the conviction, the Missouri Court of Appeals stated:

Stevenson argues that the court erred in admitting Officer Elder's testimony that she arrested Stevenson in 2002 because there was little or no need to present such evidence and the prejudice of such evidence was extreme. Further Stevenson argues that Exhibit 19 (fingerprint card) should not have been admitted as it served no purpose and was extremely prejudicial as it showed a previous arrest for, not only a DWI, but also for the similar offense of leaving the scene. Stevenson argues that at the very least, Exhibit 19 should not have been given to the jury. We disagree with Stevenson.

We find that Elder's testimony and Exhibit 19 were properly admitted. Evidence of prior uncharged crimes is generally inadmissible, but this general rule is only violated if the evidence shows the defendant was convicted of or definitely associated with another crime. Fingerprint cards, by themselves, do not constitute evidence of other crimes because non-criminals are often fingerprinted. Officer Elder's testimony was properly admitted as she did not state that she had taken Stevenson's fingerprints in connection with an arrest. Further, Elder's testimony was relevant to show Stevenson's connection to the crime with which he was charged. Stevenson's fingerprints taken by Officer Elder matched the prints left by the shooter on the hood of Officer Dover's car. Regarding Exhibit 19, while it's true that the fingerprint card shows that Stevenson was arrested for DWI and leaving the scene, Stevenson fails to establish in the record that the jury saw the evidence. Further, even if the jury saw Exhibit 19, the uncharged crimes were not similar to assaulting an officer. Finally, the abundance of evidence showing Stevenson's guilt in shooting at Officer Dover shows that there was no plain error.

Resp't Ex. at 4-5 (citation omitted).

Whether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under the Court's limited jurisdiction. Estelle v. McGuire, 502 U.S. 62, 67 (1991). "In the habeas context, '[r]ules of evidence and trial procedure are usually matters of state law. A federal issue is raised only where trial errors infringe on a specific constitutional

protection or are so prejudicial as to amount to a denial of due process.'" <u>Bucklew</u> <u>v. Luebbers</u>, 436 F.3d 1010, 1018 (8th Cir. 2006) (quoting <u>Adail v. Wyrick</u>, 711 F.2d 99, 102 (8th Cir. 1983)).  Petitioner does not argue that the fingerprint card was inadmissible on a specific constitutional ground, and when viewed in the light of all the evidence of the crime, the evidence of Petitioner's prior DWI and leaving the scene arrest was not so prejudicial as to deprive Petitioner of Due Process.  As a result, Petitioner is not entitled to relief on ground three of the petition.

4.    <u>Ground Four</u>

In ground four, Petitioner argues that the trial court erred when it prohibited him from asking on voir dire whether the venirepersons agreed that if the state did not prove Petitioner's guilt beyond a reasonable doubt, they would return a verdict of not guilty.  Respondent argues that this line of questioning requires a commitment from the jury and that the state courts reasonably adjudicated that it was improper.

During voir dire, the following exchange took place:

[Defense counsel]: Okay, good.  That's sort of the point that I'm wanting to make, is that Greg Stevenson is sitting here, an innocent man today.  He has pled not guilty, which means he's telling you, he's telling everybody that he's innocent.
    And who believes that there's never been an innocent person sit in the defendant's chair?  [No hands raised in response.]  Nobody believes that there's never been an innocent person there?

Venirepanel: (Responds verbally.)

18

[Defense counsel]: Exactly; that's my point. And that's the thing is when he's presumed innocent; he's sitting here an innocent man, and you have to listen to the evidence. And there's going to be quite a bit of evidence, expert testimony coming in here today. And I just want to make sure that everybody agrees that Mr. Stevenson is, right now, sitting here, an innocent man.

Is there anybody that doesn't believe that? I see no hands.

So I take it, you all agree with me, until the state proves beyond a reasonable doubt that Mr. Stevenson is guilty of what he's alleged to have done, that he will remain an innocent man? Is there anybody that doesn't agree with that? (No hands raised in response.)

And once all the evidence is presented, if you don't believe beyond a reasonable doubt that the state hasn't proven beyond a reasonable doubt that Mr. Stevenson is guilty of the crime committed, I'm asking – is there anybody that doesn't agree that he will remain an innocent man?

[Prosecutor]: Your Honor, I would object; that's asking for them to make a commitment at this time.

The Court: Sustained.

Resp't Ex. A at 69-70.

On this point, the Missouri Court of Appeals stated:

Stevenson argues that he is entitled to ask questions to the venire that will help determine prejudice or bias of venire panelists. The following question by Stevenson's attorney was objected to as a commitment and sustained by the trial judge: "And once all the evidence is presented, if you don't believe beyond a reasonable doubt that the state hasn't proven beyond a reasonable doubt that Mr. Stevenson is guilty of the crime committed, I'm asking – is there anybody that doesn't agree that he will remain an innocent man?" Stevenson contends that the above objected to question was not a commitment, rather it simply committed the venire panelists to follow the constitution and the instructions of the court, which is entirely proper. We disagree with Stevenson.

Upon a careful review of the transcript, we find that the court did not abuse its discretion because Stevenson was not prevented from asking the jury questions to uncover bias regarding the presumption of innocence or the burden of proof – he was only prevented from asking virtually the same question multiple times. Because other questions by Stevenson covered whether the jurors might be biased regarding the presumption of innocence or the burden of proof, he has not shown that the *voir dire* did not allow for the discovery of bias, prejudice, or impartiality. Thus, trial court did not abuse its discretion in sustaining the objection.

Resp't Ex. E at 6-7 (citation omitted).

Voir dire is generally left to the sound discretion of the trial court. <u>See Morgan v. Illinois</u>, 504 U.S. 719, 729 (1992). "'To be constitutionally compelled . . . it is not enough that such questions might be helpful. Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair.'" <u>Id.</u> at 730 n. 5 (quoting <u>Mu'Min v. Virginia</u>, 500 U.S. 415, 425-26 (1991)).

The decision of the Missouri Court of Appeals was not contrary to or an unreasonable application of clearly established federal law. Defense counsel was able to question the jury regarding the burden of proof and the presumption of innocence. That the trial court prevented him from asking the question several different ways or from seeking a commitment from the jury did not render the trial fundamentally unfair. As a result, Petitioner is not entitled to relief on ground four of the petition.

## Conclusion

For these reasons, the Court recommends that habeas relief be denied. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." <u>Khaimov v. Crist</u>, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court further recommends that no certificate of appealability be issued. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed without further proceedings.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue. 28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation. Fail to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this 14th day of August, 2013.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE